159 P.3d 903

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kevin M. PERRY, Defendant–Appellant.**

No. 32472.

Court of Appeals of Idaho.

Feb. 8, 2007.

Review Denied May 30, 2007.

---

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Thomas Tharp, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

The issue presented by this appeal is whether the district court erred in permit-

ting the State to read a witness's preliminary hearing testimony into evidence at the defendant's trial. We hold that admission of the evidence was error, but harmless in light of the remaining evidence of the defendant's guilt.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

Perry was charged with grand theft, Idaho Code §§ 18–2403(1), –2407(1)(b), for stealing money from a convenience store where he was employed as a cashier. The State alleged that while working alone one evening, Perry took funds that should have been deposited in the store's safe and that he emptied the safe's change reserve compartment. At the preliminary hearing, the State solicited the testimony of witness Patricia Young, who had worked the shift following Perry's and discovered the money to be missing. It was anticipated that Young would testify about these events at trial, but before the trial, she became ill with terminal cancer. Despite her illness, Young informed the prosecutor that she would be able to testify at trial. During the morning before the trial began, Young's daughter telephoned the prosecutor to confirm that Young would be present. Later the same morning, however, Young's daughter telephoned to notify the court that Young had suddenly become violently ill, apparently suffering from an infection caused by her cancer treatment, and consequently was unable to testify that day. The State then sought to place Young's preliminary hearing testimony into evidence at trial in lieu of her live testimony, arguing that the prior testimony, although hearsay, was admissible pursuant to Idaho Rule of Evidence 804(b)(1), which creates a hearsay exception for former testimony when the witness is unavailable to testify in person. The district court required the State to provide more information regarding Young's alleged unavailability. During a lunchtime break in the trial, the State presented the testimony of Young's daughter, who explained that Young had been hospitalized over the weekend due to an infection but had been recently released and was feeling better until that

morning when she again became very ill and required hospitalization. When asked by the prosecutor whether there was a prospect that Young might be able to testify "tomorrow morning," Young's daughter responded, "I don't see it getting better within the next twenty-four hours...."

The trial court thereupon found Young to be unavailable and admitted the preliminary hearing testimony over defense counsel's objection. A transcript of Young's former testimony was then read to the jury.

Based on this testimony and other evidence, the jury found Perry guilty of grand theft. He now appeals, contending that the district court erred in permitting the State to place Young's preliminary hearing testimony into evidence.

## II.

### DISCUSSION

#### A. The District Court Erred in Admitting the Preliminary Hearing Testimony Because It Was not Shown that the Witness Was Unavailable

Preliminary hearing testimony is admissible if two provisions are satisfied: Idaho Code § 9–336, which specifically addresses the use of preliminary hearing testimony, and Idaho Rule of Evidence 804(b)(1), which creates a hearsay exception for former testimony. These two provisions have similar requirements. Section 9–336 mandates that, before admitting the preliminary hearing testimony, the court must find:

1. [That the testimony is] [o]ffered as evidence of a material fact and that the testimony is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

2. That the witness is, after diligent and good faith attempts to locate, unavailable for the hearing; and

3. That at the preliminary hearing, the party against whom the admission of the testimony is sought had an ade-

quate opportunity to prepare and cross-examine the proffered testimony. I.C. § 9–336. Under I.R.E. 804(b)(1), former testimony will not be excluded by the hearsay rule if the declarant is unavailable to testify at trial and "if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." If the requirements of I.R.E. 804(b)(1) and I.C. § 9–336 are satisfied, the use of testimony from the preliminary hearing will be allowed. *State v. Ricks,* 122 Idaho 856, 861, 840 P.2d 400, 405 (Ct.App. 1992). A trial court's factual findings as to whether these requirements are satisfied will not be disturbed on appeal unless they are clearly erroneous. *State v. Cross,* 132 Idaho 667, 669, 978 P.2d 227, 229 (1999); *Ricks,* 122 Idaho at 863, 840 P.2d at 407. Clear error will be found on appellate review if the trial court's findings are not supported by substantial and competent evidence. *State v. Bird,* 119 Idaho 196, 198, 804 P.2d 925, 927 (Ct.App.1990); *State v. Curtis,* 106 Idaho 483, 490, 680 P.2d 1383, 1390 (Ct.App.1984).

 Under both the statute and rule, the first prerequisite for admission of preliminary hearing testimony at a later trial is a showing that the witness is unavailable. This unavailability must be established by the proponent of the testimony. *State v. Button,* 134 Idaho 864, 868, 11 P.3d 483, 487 (Ct.App.2000). Rule 804(a)(4) directs that a witness may be deemed unavailable if he or she "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." A witness is not "unavailable," however, merely because he or she cannot be present on a particular day. Rather, the unavailability "must be of such duration that a continuance is not a practical alternative." *Button,* 134 Idaho at 868, 11 P.3d at 487 (a witness who had missed his flight was not unavailable because the State could have requested a continuance until he arrived on another flight later that day).

 Although we have not directly addressed the practicality of a continuance when a witness is ill,[1] other jurisdictions have noted that a witness's incapacity must be shown to be of a probable duration long enough that trial cannot be postponed. For example, in *Peterson v. United States,* 344 F.2d 419 (5th Cir.1965), the Fifth Circuit Court of Appeals determined that a pregnant witness was not unavailable when the State could have requested a continuance to a time after she delivered. The proponent of the evidence need not show that the witness's incapacity is permanent, but that it is likely to be of such duration that it is not practical to continue the trial on the chance that the witness might recover sufficiently to testify. *See United States v. Amaya,* 533 F.2d 188, 191 (5th Cir.1976). This test is not met merely by showing that the witness suffers from an illness that will ultimately be fatal. Rather, evidence must be presented from which it can be inferred that the individual is unlikely to rally sufficiently to come to court and testify. For example, in *State v. Stafford,* 255 Kan. 807, 878 P.2d 820 (1994), a witness was properly deemed unavailable when she was suffering from an untreatable form of cancer and was constantly medicated with drugs that were causing hallucinations and memory loss. In *Davis v. State,* 753 P.2d 388 (Okla.Crim.App.1988), a terminally ill witness was deemed unavailable when he was bedridden and too weak to travel. In *State v. Williams,* 115 A.D.2d 676, 496 N.Y.S.2d 510 (1985), the trial court properly determined that a witness was unavailable when his doctor testified that the witness was residing at a nursing home and incapable of coming to court due to his medical and mental condition. In none of these cases were there circumstances suggesting that a continuance might be a practical alternative because the witness might recuperate enough to become capable of testifying in the near future.

In the present case, by contrast, there were indications that, although Young suf-

---

1. In *State v. Bagshaw,* 137 Idaho 613, 616–17, 51 P.3d 427, 430–31 (Ct.App.2002), we noted the defendant's argument that a pregnant witness was only temporarily unavailable, but decided the issue on the grounds that the defendant could not complain because he objected to the State's motion for a continuance.

fered from a terminal illness, in the short term she might well recuperate enough to give her testimony at trial. As recently as the morning when the trial began, Young had been intending to testify. During the lunch break, when the prosecutor presented the testimony of Young's daughter, the prosecutor elicited no testimony about the probable duration of Young's incapacity. The sole question concerning the likelihood of Young's future availability as a witness was an inquiry as to whether Young "might be feeling better tomorrow where she could come testify tomorrow morning." No information was presented on the likelihood of Young's availability if the case were continued for a few days or started anew in a few weeks.

The evidence of Young's relapse, making her unavailable through at least the next day, did not demonstrate that her unavailability was "of such duration that a continuance [was] not a practical alternative." *Button,* 134 Idaho at 868, 11 P.3d at 487. On this record, we cannot say that the district court's finding that Young was unavailable is supported by substantial evidence. Therefore, admission of her preliminary hearing testimony was error.

### B. The Error Was Harmless

▮ Our conclusion that Young's preliminary hearing testimony was erroneously admitted requires that we further determine whether the error necessitates a new trial. When it appears, beyond a reasonable doubt, that the jury would have reached the same result absent an evidentiary error, the error will be deemed harmless. *State v. Moore,* 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *State v. Hill,* 140 Idaho 625, 629, 97 P.3d 1014, 1018 (Ct.App.2004).

We begin by considering the content of Young's preliminary hearing testimony. Young worked the graveyard shift, which immediately followed Perry's on the night of the incident. At the preliminary hearing, Young testified that when she arrived for her shift, she noticed that a measuring stick used to determine the amount of money in the store's safe was missing. The store used a safe with a reserve compartment that was pre-loaded with rolls of cash and coins which

clerks could obtain in order to make change. The change in the safe was dispensed by a vending system that could allot a roll of the chosen denomination once every two minutes. At the beginning of their shifts, the employees used a measuring stick to determine how many rolls of money were available in each slot of the vending system, enter the number on the shift log, and reconcile this amount with the log of the previous shift. Because the measuring stick was missing, Young inquired of Perry, who said that another employee had dropped the measuring stick behind the safe earlier in the day. Perry then told Young the amount of money supposedly left in the change reserve so she could complete her paperwork.

Young testified that an hour and a half into her shift, she decided that she needed to refresh her supply of quarters and attempted to access the change reserve. She could hear the machine operating, but it did not vend any money. She unsuccessfully attempted to reset the machine, and then called her manager to report the problem. After the manager arrived at the store and removed the safe in order to investigate, Young noticed that the measuring stick was not behind the safe as Perry had claimed. When the manager opened the safe, Young saw that there was no money in the reserve compartment. There was also no cash in another compartment of the safe where Perry should have deposited money received from sales made during his shift. Young also testified that she did not take the money and that her attempt to retrieve more quarters was the first time she had touched the safe all night.

This testimony from Young provided two pieces of information that were not otherwise encompassed by other evidence presented at trial. First, her testimony about the missing measuring stick suggested that Perry attempted to conceal his crime, particularly in conjunction with a security videotape that showed Perry using the stick after the time he claimed it had been dropped behind the safe. (The manager testified that he found the missing measuring stick a year later behind an ice machine in a back room.) From Young's testimony, the jury could infer

that Perry hid the measuring stick and lied about its whereabouts in order to prevent Young from checking the safe at the beginning of her shift, thus forestalling the discovery of the missing money. Second, Young's preliminary hearing testimony told to the jury that she was not the perpetrator of the crime. She affirmatively avowed that she did not take the money, an assertion supported by her explanation of how she immediately reported to her manager when she discovered the problems with the safe.

Nevertheless, we are convinced beyond a reasonable doubt that the jury would have found Perry guilty even without Young's preliminary hearing testimony. There was other very significant evidence that Perry took the money from the reserve compartment of the safe. The manager testified that when Perry relieved him earlier that day, the manager had determined the amount of money in each compartment of the vending machine, and noted on his paperwork that there were between ten and thirteen rolls of money in each slot. When the manager returned to the store to check the safe later that evening, he discovered that many of the slots, particularly the higher denominations, were empty. During Perry's shift that passed in the interim, the store's security video showed Perry making motions consistent with accessing the reserve compartment at least twenty-five times, although he had noted only two on his shift log. The video also showed Perry using the measuring stick five times to check the amount of money in the reserve compartment, although employees typically measured the safe only at the beginning and end of their shifts. Even absent Patricia Young's assertion that she did not take this money, the videotape made during her shift supports the inference that she did not commit the crime. The video showed that, unlike Perry, Young made only one attempt to access the reserve compartment of the safe, and when she did so, her actions suggested that she was having difficulty, for she attempted to reset the vending machine and retrieved a flashlight to try to look inside.

There was also compelling evidence that Perry took the money that he should have deposited in the main compartment of the safe. Employees were to deposit money when their cash registers contained more than $200. The cash register receipts from Perry's shift showed that twenty-one drops were made totaling $3,000. Of this sum, $2,439 was missing, and the security videotape showed that Perry had not made any movements consistent with making a deposit into the main portion of the safe. In the final deposit at the end of his shift, Perry wrote that the deposit was $480, but the plastic bag for this drop contained only $41. Perry's shift log not only misrepresented that he had accessed the change reserve only twice; it also incorrectly said that there was $2,244 in the change machine, when in fact there was only $344. In addition, the evidence showed that after his shift, Perry never returned to work. Instead, he checked out of the motel where he was living (even though he had prepaid for several more days) and apparently left the state. The conclusion is nearly inescapable that Perry stole the money and then took actions that he hoped would give him time to leave the area and evade capture before the crime was discovered. Under these circumstances we are convinced that the error in admitting Patricia Young's preliminary hearing testimony was harmless.

## III.

## CONCLUSION

The district court incorrectly determined that Patricia Young was an unavailable witness and the admission of her preliminary testimony was therefore erroneous. Because this error was harmless, however, we affirm the judgment of conviction.

Chief Judge PERRY and Judge GUTIERREZ concur.